**UNITED STATES ex rel. SWYSTUN v. Mc-CANDLESS, Commissioner of Immigration.**

District Court, E. D. Pennsylvania. February 8, 1928.

No. M–125.

1. Aliens ⬤➡53—Statutes, presidential proclamation, and congressional resolution held not to warrant deportation of alien because of official's failure to sign passport visé (Immigration Act 1924 [8 USCA § 201 et seq.]; 22 USCA §§ 223–227; Comp. St. §§ 4289½a, 4289½dd, and § 4289¼a et seq.).

Immigration Act 1924 (8 USCA § 201 et seq.), which is not retroactive, presidential proclamation (40 Stat. 1829) under Act May 22, 1918 (22 USCA §§ 223–226), a war measure expressly kept in force by Act March 2, 1921, § 1 (22 USCA § 227), Act Feb. 5, 1917 (Comp. St. § 4289¼a et seq.), and Resolution May 11, 1922 (Comp. St. §§ 4289½a, 4289½dd), prescribing rules for guidance of immigration officials, held not to warrant deportation of alien, entering country in 1922, because of official's failure to sign required visé of passport.

2. Aliens ⬤➡53—Statutes merely prescribing rules for immigration officials' guidance do not warrant deportation of alien because of noncompliance therewith.

Statutes merely prescribing rules for guidance of immigration officials do not warrant deportation of alien because of such officials' failure to comply with requirements thereof.

3. Aliens ⬤➡54(16)—Order of deportation by Department of Labor because of official's failure to sign passport visé held not conclusive on courts (Immigration Act 1924 [8 USCA § 201 et seq.]; 22 USCA §§ 223–227; Comp. St. §§ 4289½a, 4289½dd, and § 4289¼a et seq.]).

Ruling of Department of Labor that alien entering in 1922 must be deported because of

proper official's failure to visé his passport is not conclusive on courts, as order of deportation cannot be based on such failure under Immigration Act 1924 (8 USCA § 201 et seq.), presidential proclamation (40 Stat. 1829) under Act May 22, 1918 (22 USCA §§ 223–226), expressly kept in force by Act March 2, 1921, § 1 (22 USCA § 227), Act Feb. 5, 1917 (Comp. St. § 4289¼a et seq.), or Resolution May 11, 1922 (Comp. St. §§ 4289½a, 4289½dd).

4. Aliens ⬤➡53—That alien may re-enter country under immigration act does not warrant deportation not otherwise authorized (Immigration Act 1924 [8 USCA § 201 et seq.]; 22 USCA §§ 223–227; Comp. St. §§ 4289½a, 4289½dd, and § 4289¼a et seq.).

That alien coming from territory formerly part of Austria, and afterwards of Poland, in 1922, may re-enter country under Immigration Act 1924 (8 USCA § 201 et seq.), because such territory became part of Roumania following Versailles Treaty, does not warrant order of deportation, not authorized by such act, presidential proclamation (40 Stat. 1829) under Act May 22, 1918 (22 USCA §§ 223–226), expressly kept in force by Act March 2, 1921, § 1 (22 USCA § 227), Act Feb. 5, 1917 (Comp. St. § 4289¼a et seq.), or Resolution May 11, 1922 (Comp. St. §§ 4289½a, 4289½dd).

5. Aliens ⬤➡40—Act authorizing President to require passport visé on penalty of deportation was not kept in force by subsequent act in respect to deportation (22 USCA §§ 223–227).

Act May 22, 1918 (22 USCA §§ 223–226), under which President issued proclamation (40 Stat. 1829) requiring visé of passports, and deportation on failure to comply therewith, was kept in force by Act March 2, 1921, § 1 (22 USCA § 227), as respects requirement of passports and visé, but not as to authority to deport.

Habeas Corpus. Application by the United States, on the relation of Theodore J. Swystun, for a writ to John B. McCandless, Commissioner of Immigration. Heard on writ, return, and traverse. Relator discharged.

Adrian Bonnelly, of Philadelphia, Pa., for plaintiff.

George W. Coles, U. S. Atty., of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The conclusion reached is that the relator should be discharged from custody.

Discussion.

This case is one which on its fact merits is called in the vernacular "a hard case." The relator came to the United States November 1 or 8, 1922. No question whatever is raised of his personal worth, and he is commended in the highest terms by those

whose commendation demands our respect. He entered the army, from which he holds an honorable discharge. He declared his intention to become a citizen, and received from his commanding officer a certificate that he is within the benefits of the act of Congress which confers upon those who have served as enlisted men for a prescribed time the right to naturalization without compliance with the conditions exacted from others. We may suppose it was with some pride that he presented to the officials of a Naturalization Bureau this certificate of merit, and asked for their official aid, so that his application for citizenship might be presented to the court. While waiting in expectation of being notified of the day he would become a citizen of the United States, he received the startling notification that he was under arrest to be deported. During the time of his residence here he married, and now has a son born an American citizen, but who with the mother must go out of the country with the father. Why this disappointment to all his hopes and ambitions? The answer given is that the official to whom he submitted his passport when he sought entrance to this country had failed to sign his name to the required visé. The heart would indeed be hard which was not moved to sympathy by the thought of this mother and child being deported to what is to them a strange and foreign land, and yet they must go if the relator is deported, or submit to the even more bitter separation from husband and father. Hard as the case is, however, if it is the lawful result of our immigration laws enacted to enforce a policy which has become absolutely necessary for the protection of our people and our institutions, it must be faced and dealt with without weakness. No general law of this kind, however beneficent its public purposes and well considered its provisions, can be enforced without producing cases of individual hardship. Happily for all of us, however, we are still under the protection of the law, and no official can deprive us of our liberty, or send us out of the country, unless the law so commands. The question then resolves itself solely into one of law. All are agreed that the question is whether this relator is lawfully subject to arrest and deportation because an official signature is missing from his passport.

[1, 2] The Act of Congress of July 1, 1924 (43 Stat. 153 [8 USCA § 201 et seq.]), admittedly expressly requires as a condition precedent to a lawful entry to the United States that the immigrant shall be provided with a passport bearing an official visé, and expressly sanctions his deportation for the violation of any of the provisions of the act. This, however, was not the law until 1924, and, as this relator came to this country in 1922, and as the law was not made retroactive, it (again admittedly) does not warrant his deportation. A proclamation of the Chief Executive (40 Stat. 1829), however, authorized by the Act of May 22, 1918 (40 Stat. 559 [22 USCA §§ 223–226]), required a like visé, and proclaimed deportation as the consequence of a failure to comply with its requirements. This law, if still in force, would justify the proceeding now under scrutiny. The nature and date of the proclamation shows it to have been a war measure which is found to have been with other laws enacted for a like purpose since repealed. The other acts of Congress to which we have been referred are far short of the mark at which they are sought to be aimed. We are in search, let it be recalled, not of acts of Congress which prescribe rules for the guidance of immigration officials, but of any law which carries as the consequence of a failure of such officials to comply with its requirements a sentence of deportation of the immigrant. An examination of these acts discloses that none of them does this. Act of February 5th, 1917 (39 Stat. 874 [Comp. St. § 4289¼a et seq.]); Resolution of May 11, 1922 (42 Stat. 540 [Comp. St. §§ 4289½a, 4289½dd]).

[3] The proposition is advanced that the decision of the question of liability to deportation is one wholly within the province of the Department of Labor to decide, the courts having no jurisdictional authority to determine the question, and that the ruling of the department is conclusive, and must be accepted. So far as this proposition is a sound one, it must necessarily be based upon the premise that the immigration authorities have the lawful power to issue an order of exclusion. Every question of a law must arise out of a state of facts, and the sole fact here upon which the assertion of power is based is that already adverted to as the failure of the proper official to visé the passport of the relator. We have already found that this will not base an order of deportation. We have said that this is the sole fact ground upon which the order is based because of the statement at bar that it was the one basis for the order advanced and relied upon.

There is upon the record the further fact finding by the immigration authorities that the relator was likely to become a public charge. This finding is, we assume, purely

formal and perfunctory, because there is absolutely nothing in the evidence upon which such a finding could be based, and, on the contrary, it is in conflict with every fact in the cause. This is admitted, in that the immigration authorities, while not formally withdrawing this charge, do not press it. We make the formal finding that upon this charge the relator did not have a fair hearing, inasmuch as the finding is without evidence to support it, and is contradicted by every fact which appears in the case.

[4] It has been urged upon us that the distressing consequences of an order of deportation in this case are not as great as on the face of the proceeding they would seem to be, because the territory from which the relator comes, formerly a part of Austria and afterwards of Poland, has by a readjustment of territorial lines following the Versailles Treaty become a part of Roumania, and that the relator may re-enter the country under the provisions of the Immigration Act of 1924. The meaning of this is that these deportation proceedings are no more than a matter of form, in that the final result will be that the relator may return to the United States and resume the status which he now has. However important compliance with these mere formalities may be, an order of deportation cannot issue, unless it is backed by the mandate of the law. It is the absence of this mandate which has been found.

[5] We have been handed an additional brief by which it is pointed out that the war measure referred to, and which we have stated had been repealed, was expressly kept in force by the Act of March 2d, 1921 (41 Stat. 1217, § 1 [22 USCA § 227]). This is true in so far as the provisions related to the requirement of passports and visés, but it is not true respecting the authority to deport. We had in mind this act in making the distinction to which we have before adverted between a law laid down for the guidance of officials and another law authorizing deportations.

The point has not been raised, and because of this is not ruled, but the existence of the asserted power to deport may be a power which must be exercised by the deportation of the immigrant within five years, and thereafter does not exist. This relator has been in the country for over five years.

There being thus found to be no warrant nor justification in the law for the deportation of the relator, his arrest and deprivation of his liberty is unlawful, and a formal order discharging him without day may be submitted.